IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANTHONY TUCKER,           )<br>                          )<br>     Plaintiff,         )<br>                          )<br>  vs.                     )<br>                          )<br>BENJAMIN PEREZ, in his    )<br>individual capacity as    )<br>Honolulu Police Officer; JANE )<br>AND JOHN DOES 1-100; DOE  )<br>AGENCIES 1-10; DOE        )<br>CORPORATIONS 1-10; DOE    )<br>ASSOCIATIONS 1-10; and DOE )<br>BUSINESS ENTITIES 1-10,   )<br>                          )<br>     Defendants.          )<br>_____ ) | CIV. NO. 09-00376 SOM/KSC<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

This is a classic case of "he said" vs. "he said." Plaintiff Anthony Tucker concedes that he had a verbal dispute with his neighbor, but says that the dispute did not justify the pepper-spraying of him and his family by an off-duty police officer, Defendant Benjamin Perez. Tucker says that neither he nor any member of his family acted aggressively toward Perez and that they were pepper-sprayed without warning. Perez presents a totally different version. Perez says that he heard his neighbors fighting and saw Tucker shove another neighbor. Perez says that he tried to stop the confrontation, only to be attacked

himself.  Perez says that he used pepper spray because Tucker and his family were aggressive.

Given this court's earlier ruling, only two claims remain for adjudication--excessive force (First Claim for Relief) and common-law battery (Fourth Claim for Relief).  Perez has moved for summary judgment.  With respect to the excessive force claim, Perez argues that his use of force was reasonable and that he is entitled to qualified immunity.  However, a question of fact precludes summary judgment on the excessive force claim.  With respect to the common-law battery claim, Perez argues that he has a conditional privilege.  This court agrees and grants summary judgment in favor of Perez on that claim.  This order therefore leaves for further adjudication only Tucker's excessive force claim.

II.     STANDARD OF REVIEW.

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary

judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See Celotex, 477 U.S. at 323. A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. Nissan Fire, 210 F.3d at 1102-03. On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Miller, 454 F.3d at 987. This means that the nonmoving party "must do

more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>California v. Campbell</u>, 319 F.3d 1161, 1166 (9th Cir. 2003); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." <u>Miller</u>, 454 F.3d at 988 (quotations and brackets omitted).

III.    <u>PROCEDURAL BACKGROUND.</u>

On July 28, 2010, this court granted in part and denied in part Perez's motion for judgment on the pleadings.  Except for the excessive force claim asserted in the First Claim for Relief and the common-law battery claim asserted in the Fourth Claim for Relief, all of the claims asserted in Tucker's Complaint were

4

dismissed.  See Order Granting in Part, Denying in Part Defendant's Motion for Judgment on the Pleadings, July 28, 2010, ECF No. 30.

IV.     FACTUAL BACKGROUND.

Tucker and his neighbor, John Viernes, Sr., got into an argument over whether Tucker had damaged Viernes's car.  See Declaration of Anthony Tucker ¶ 2 (Aug. 27, 2010).  Tucker says that Viernes tried to hit him and used racial slurs.  See id. ¶ 4.  Tucker says that Viernes's son then joined Viernes in threatening Tucker and that Viernes's son also tried to hit him. See id. ¶¶ 6, 9, 10.  Tucker says that Viernes's wife also yelled racial slurs at him.  See id. 5.

Tucker says that, surrounded by Viernes, Viernes's son, and Viernes's wife, Tucker was joined by his sons, Anthony Jr. and Timothy.  See id. ¶ 10.  Tucker says he heard Viernes's wife yell, "Spray them, spray them."  Id. ¶ 13.  Tucker says that his family did not attack anyone.  Id. ¶ 18; see also Declaration of Anthony Tucker, Jr. ¶ 5 (Aug. 27, 2010) (claiming that members of the Tucker family were not the "aggressors at the scene"). Tucker says his neighbor, Officer Perez, nevertheless charged in, grabbed Tucker's son from behind, threw him to the pavement, and then pepper-sprayed his face from one-inch away.  Id.; See Anthony Tucker, Jr., Decl. ¶ 5 (claiming that, after being thrown to the ground, Anthony Jr. was pepper-sprayed even though he was

not moving).  Tucker says that Perez then pushed Tucker himself to one knee and pepper-sprayed him.  See Tucker Decl. ¶ 13.

Perez's description of what occurred differs from Tucker's.  Perez says that, after getting off of night duty, he went to bed.  A couple hours later, around noon, Perez's son told Perez that a couple of neighbors were fighting.  Perez says that he told his son to call 911.  See Perez Decl. ¶¶ 6-7.  Told that 911 was busy, Perez says he went to his window and saw Tucker shove Viernes.  Id. ¶ 9.  Perez says that he himself then tried to call 911, only to get a busy signal.  Id. ¶ 10.  Perez says that he then called for uniformed officers to come to the scene via his police radio.  Perez says he was told that no units were available, but that they would be dispatched as soon as they were available.  Id.

Perez says that he thought that the confrontation between his neighbors was going to escalate into a violent encounter.  Id. ¶ 11.  According to Perez, he grabbed his police identification, his police radio, and his pepper spray and went outside.  Id.  Once outside, Perez says, he displayed his identification and told everyone to "knock it off."  Id. ¶ 12.  Perez says that, eventually, Viernes moved away.  Id.  By contrast, Perez says, Tucker told him, "Fuck you.  This doesn't involve you."  Id. ¶ 13.  Perez says that Tucker continued to try to get around Perez to reach Viernes.  Id. ¶ 14.  Perez says that

6

after both Tucker and his son swung at Perez, Perez pepper-sprayed Tucker. Id. ¶ 15. Perez recalls that Tucker's two other companions approached him aggressively, causing him to tell them to "stay back." Perez says he pepper-sprayed them when they did not comply. Id. Perez says that because other people from Tucker's house then approached him in an aggressive manner, he pepper-sprayed in their general direction. Id.

V.    ANALYSIS.

    A.    Summary Judgment is Denied With Respect to the Excessive Force Claim.

Perez claims that he is entitled to qualified immunity with respect to Tucker's excessive force claim. The doctrine of qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quotations omitted). Although the Supreme Court earlier laid out a two-step sequence for a court to follow in resolving a government official's qualified immunity claims, that sequence is no longer mandatory. Id. at 817. This court may therefore exercise its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818; Bryan v. MacPherson, 608 F.3d 614, 619 (9th Cir. 2010).

Under one prong, this court must decide whether the facts that Tucker has alleged make out a violation of a constitutional right. Pearson, 129 S. Ct. at 815-16; MacPherson, 608 F.3d at 619 ("taking the facts in the light most favorable to the non-moving party, the first prong examines whether the officer's conduct violated a constitutional right"). Under the other prong, this court must decide whether the right at issue was "clearly established at the time of the defendant's alleged misconduct." Pearson, 129 S. Ct. at 815-16; MacPherson, 608 F.3d at 619 (asking whether the right was "clearly established in light of the specific context of the case").

Tucker claims that Perez, without any justification, used excessive force when he pepper-sprayed Tucker--an unreasonable seizure. Tucker's excessive force claim is analyzed under the Fourth Amendment and its objective reasonableness standard. See Graham v. Connor, 490 U.S. 386, 393-94 (1989) (noting that the analysis of an excessive force claim begins with the identification of the specific constitutional right violated by application of force); see also Tekle v. United States, 511 F.3d 839, 844 (9th Cir. 2007) ("Use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.") (brackets and quotations omitted).

To determine whether a law enforcement officer's use of force was objectively reasonable, a court must balance the

"nature and quality of the intrusion" on an individual's Fourth Amendment interests against the "countervailing governmental interests" at stake. Graham, 490 U.S. at 396. A court evaluates the governmental interests by examining "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

The determination of whether force was reasonable requires "careful attention to the facts and circumstances of each particular case." Id. "Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir. 2003); See Jackson v. City of Bremerton, 268 F.3d 646, 651 n.1 (9th Cir. 2001) (noting that the test for reasonableness is often a jury question).

A question of fact exists as to whether Perez's use of pepper spray was reasonable under the circumstances. Perez claims that he used the pepper spray only when Tucker and his son tried to hit him, and that Tucker and his family acted "aggressively." Tucker, on the other hand, denies having acted aggressively and claims that he and his family were doing nothing wrong when they were pepper-sprayed without justification. Given

the differing versions of what happened, a question of fact exists as to whether Perez's use of pepper spray was reasonable or was a violation of Tucker's Fourth Amendment rights.

Turning to the next prong of the qualified immunity analysis, this court considers whether Perez's conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." MacPherson, 608 F.3d at 628 (quotations omitted). If the officer's use of force was based on a reasonable belief that the force was lawful, the officer has immunity, even if the force was excessive. Id.

Although the Supreme Court has not addressed excessive force claims arising out of the use of pepper spray, the Ninth Circuit has noted that "no particularized case law is necessary" to make a right clearly established. The Ninth Circuit has recognized that an officer's use of pepper spray may constitute excessive force when "any reasonable officer would know that a continued use of the weapon or a refusal without cause to alleviate its harmful effects constitutes excessive force." LeLonde v. County of Riverside, 204 F.3d 947, 961 (9th Cir. 2000); accord Smith v. City of Hemet, 394 F.3d 689, 704 n.7 (9th Cir. 2005) ("Certainly, the use of a police canine and pepper-spray could, under clearly established law, have constituted the use of excessive force in some circumstances, in which case the

10

officers would have been put on notice that their conduct would be unconstitutional."). Because a question of fact exists as to whether Tucker and his family were complying with Perez's requests or whether Tucker and his son were acting aggressively and trying to hit Perez, this court cannot determine whether a reasonable officer would have known that Perez's use of pepper spray constituted excessive force. If, as Tucker is claiming, he was merely standing around and doing nothing when he was pepper-sprayed without warning or justification, a reasonable officer would have known that use of pepper spray constituted excessive force. On the other hand, if Tucker was acting aggressively and attempting to hit Perez, reasonable officers could think that using pepper spray on Tucker was reasonable, lawful, and not an example of excessive force. A question of fact therefore precludes this court from determining whether Perez violated a clearly established right.

Citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996), and Johnson v. Washington Metropolitan Area Transit Authority, 883 F.2d 125, 128 (D.C. Cir. 1989), Perez argues that Tucker's uncorroborated and self-serving statements are insufficient to create triable issues of fact. The Ninth Circuit has rejected that argument and criticized Johnson as disregarding "the Supreme Court's clear pronouncement limiting the scope of summary judgment." Leslie v. Grupo ICA, 198 F.3d

1152, 1157 (9th Cir. 1999).  The Ninth Circuit appears to conclude that, while "sham" affidavits designed to create triable issues by contradicting earlier sworn statements may be disregarded, there is no general rule allowing a court to disregard testimony on the sole ground that it is self-serving.  Id.  Even Kennedy does not stand for the proposition for which Tucker cites it.  In Kennedy, the court concluded that no genuine issue of fact was raised by deposition testimony that was uncorroborated and self-serving when that testimony contradicted the deponent's prior sworn statements and medical evidence.  Id.  The case did not go so far as to say that a triable issue of fact cannot be created based on a party's declaration.

   B.  Summary Judgement is Granted on the Battery Claim.

  Perez argues that he has a qualified or conditional privilege that protects him from liability for the battery claim asserted in the Complaint.  This court agrees.

  Hawaii law provides a nonjudicial government official with a qualified or conditional privilege with respect to his or her tortious actions taken in the performance of his or her public duty.  Towse v. State of Hawaii, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982); Runnels v. Okamoto, 56 Haw. 1, 4, 525 P.2d 1125, 1128 (1974).  This privilege shields all but the most guilty nonjudicial officials from liability, but not from the imposition of a suit itself.  Towse, 64 Haw. at 631, 647 P.2d at

702. The privilege flows from the Hawaii Supreme Court's balancing of competing interests. It protects the innocent public servant's pocketbook, yet allows an injured party to be heard. See Medeiros v. Kondo, 55 Haw. 499, 504, 522 P.2d 1269, 1272 (1974).

For a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose. Towse, 64 Haw. at 631-33, 647 P.2d at 702-03; Medeiros, 55 Haw. at 504-05, 522 P.2d at 1272. When a public official is motivated by malice and not by an otherwise proper purpose, Hawaii law provides that the cloak of immunity is lost and the official must defend the suit the same as any other defendant. Marshall v. Univ. of Haw., 9 Haw. App. 21, 37, 821 P.2d 937, 946 (Ct. App. 1991), abrogated on other grounds by Hac v. Univ. of Haw., 102 Haw. 92, 73 P.3d 46 (2003).

Perez moves for summary judgment, arguing that there is no evidence of malice. Tucker's Opposition did not oppose summary judgment on the battery claim and presented no evidence of malice. At the hearing, however, Tucker said he was not conceding the malice issue, instead arguing that malice was possibly demonstrated by Perez's pushing of Tucker to the ground and by Perez's favorable actions concerning the Viernes family

and social contacts with that family.  Neither of those alleged facts demonstrates malice.  Even if Perez pushed Tucker to the ground without justification, excessive force does not equate to malice.  Moreover, a favorable view of someone, without more, does not indicate malice towards another.  Summary judgment is therefore granted in favor of Perez on the battery claim.

VI.     CONCLUSION.

As set forth above, the court grants in part and denies in part the motion for summary judgment.  Summary judgment is denied with respect to the excessive force claim, as questions of fact exist as to what the circumstances were when Perez used the pepper spray.  However, summary judgment is granted in favor of Perez with respect to the battery claim, as Tucker presents no evidence raising a triable issue of fact as to whether Perez acted with malice.

At the hearing, Perez requested an advisory ruling as to whether he could move for reconsideration based on a different

record.  This court declines to rule on that request, but notes that a new motion may be more appropriate than a motion for reconsideration.  <u>See, e.g.</u>, <u>Hoffman v. Tonnemacher</u>, 593 F.3d 908, 911 (9th Cir. 2010) ("district courts have discretion to permit successive motions for summary judgment").

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii September 27, 2010.



        <u>/s/ Susan Oki Mollway</u>
        Susan Oki Mollway
        Chief United States District Judge

Tucker v. Perez, Civ. No. 09-00376 SOM/KSC, Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment